## PIDGEON-THOMAS IRON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46093. Promulgated January 31, 1933.

*Homer K. Jones, Esq.,* and *Frank J. Albus, Esq.,* for the petitioner.
*R. W. Wilson, Esq.,* for the respondent.

### OPINION.

LANSDON: The respondent has asserted a deficiency in income tax for the period from February 1 to December 31, 1927, in the amount of $2,589.24. The only question involved is whether the respondent erroneously disallowed as a deduction from income in the taxable period, the amount of $20,000 paid out by the petitioner for legal services. At the hearing the parties filed the following stipulation:

That the petitioner was duly organized on February 1, 1927, under the laws of the State of Delaware, and is engaged in the wholesale and retail iron and steel business, with its principal office at Memphis, Tennessee.

That the Pidgeon-Thomas Iron Company, a corporation organized under the laws of the State of Tennessee, was incorporated in 1908 with capital stock of $100,000. That with the exception of a few qualifying shares the stock was owned by P. Pidgeon and George W. Thomas. That P. Pidgeon died in 1918 and his stock went to the members of his family. That on December 28, 1922, George W. Thomas and the members of his family (who controlled the corporation) executed a contract with Philip Pidgeon, Frank Pidgeon and James Pidgeon, under the terms of which the members of the Pidgeon family were given an option to purchase the stock then owned by George W. Thomas and family within one year after the date of the death of George W. Thomas; said contract also provided the method to be used in computing the price to be paid. That George W. Thomas died during 1925.

That the members of the Pidgeon family failed to exercise the option to purchase the stock held by the Thomas family. That the question was then presented as to whether the corporation should liquidate or continue in business. That thereafter the plan agreed to by all the stockholders was that the Tennessee corporation would surrender its charter; a Delaware corporation of the same name would be organized with a capital of $600,000 to take over the business; and immediately thereafter all of the stock of the new corporation owned by the Thomas family would be taken up by the corporation as follows:

| | |
|---|---:|
| Par value Delaware corporation stock | $337,000.00 |
| Premium on stock | 631,258.34 |
| | |
| Total at $287.31 per share of | 968,258.34 |

| | | |
|---|---:|---:|
| Cash 2-21-27 | $468,258.34 | |
| Notes given | 500,000.00 | |
| | | |
| Total | | 968,258.34 |

That the plan thus agreed to by the stockholders of the Pidgeon-Thomas Iron Company (Tennessee) was carried out; on February 1, 1927, the certificates of the Delaware corporation were issued, that with the formation of the new company there were issued to the stockholders of the old company six shares of the new stock for one share of the old. The members of the Thomas family endorsed their new certificates back to the new corporation the same day, thus leaving the members of the Pidgeon family in control of the outstanding stock, to-wit, $263,000 of the Delaware corporation.

That the members of the firm of Holmes, Canale, Loch & Glankler are engaged in the practice of law at Memphis, Tennessee. That during the early part of 1926 this firm was engaged to represent the Pidgeon-Thomas Iron Company, Memphis, Tennessee. That the services of this firm were engaged after the officers of the Iron Company had had many conferences with the Bank of Commerce & Trust Company as Executor and Trustee under the will of G. W. Thomas, deceased, said G. W. Thomas having been a majority stockholder in said corporation.

That it at once became necessary for counsel to familiarize themselves with the financial condition of the corporation (Pidgeon-Thomas Iron Company (Tennessee)), going into full detail as to its items on its balance sheet such as inventory and nature thereof, accounts receivable and nature thereof, real estate and buildings and appraisals thereof, depreciation and obsolescence, machinery and nature thereof, and all other items comprising the balance sheet, then checking up the liabilities of the company, the nature and maturities thereof, and, in a detailed way, going over the whole financial structure of said corporation. That the Bank of Commerce & Trust Company, as trustee, was charged with the responsibility for the proper conduct of the affairs of the corporation, and numerous conferences were held during 1926 between the officers of said trust and counsel, as to the policy to be pursued in the conduct of the company's business.

That many months were devoted to conferences looking toward the corporation itself buying out the shares of stock of the Thomas Estate and the Thomas sisters. That conferences were held looking toward the basis upon which the Thomas stock could be purchased by the corporation. That numerous other conferences were held with the Bank and with representatives of the Thomases, wherein the amount of cash to be paid by the corporation and the period of time over which deferred payments were to be made were gone into; matters of rate of interest on deferred payments and other terms and provisions relating to a transaction of this character were gone into in minute detail, all over a period of months.

That in addition thereto, the building contracts of the corporation received careful consideration.

That in order to put into effect the agreement finally reached by all interested parties it was necessary to form a new corporation under the laws of the State of Delaware for the purpose of enabling such new corporation under its charter powers to purchase the stock out of its available surplus. That thereupon a new charter was devised under the laws of Delaware calling for an authorized capital of 6,000 shares of the par value of $100 per share, aggregating $600,000. That minutes of stockholders' and directors' meetings, by-laws for the Delaware corporation and instruments conveying the assets of the old corporation to the new corporation in exchange for the stock of the new corporation had to be prepared and adopted at meetings of the old and the new corporation.

That numerous contracts were drafted and re-drafted by counsel to carry into effect the negotiations of the parties.

That in addition to all of the foregoing there were numerous matters pertaining to the routine conduct of the corporation's (Tennessee) affairs, tax matters, accounts, mechanics' and material men's liens, contracts with customers, and such other matters as could reasonably be expected to arise in the conduct of the affairs of a company of this character and size about which the officers necessarily had to be advised.

That the legal services rendered and performed by the members of the firm of Holmes, Canale, Loch & Glankler as hereinbefore set out in detail, extended over the period January 1926 to February 1927, inclusive.

That on March 25, 1927, the said firm of Holmes, Canale, Loch & Glankler tendered two bills of $20,000 and $5,000, respectively, to the petitioner for legal services thus rendered by it as hereinbefore set out. A copy of the bills for certain services is attached hereto, marked Exhibit A* and expressly made a part hereof.

That the petitioner duly paid to the firm of Holmes, Canale, Loch & Glankler during the year 1927, the sum of $25,000. That the whole of said amount was charged to expense on petitioner's books of account, but $5,000 thereof was restored to income in filing petitioner's return for 1927. That the petitioner has claimed a deduction of $20,000 of the amount so paid to the law firm as ordinary and necessary business expenses. That the Commissioner has disallowed said claimed deduction in its entirety, on the ground that the expenditure represented payment of organization expenses.

Petitioner contends that the bills rendered to it by the law firm are sufficient evidence of the nature of the service rendered. In our opinion, even if material, this allocation made by the lawyers is not conclusive and can not be accepted as controlling unless supported by the stipulation of facts. The law firm was employed early in

*March 25, 1927.*

*PIDGEON-THOMAS IRON COMPANY,*   To HOLMES, CANALE, LOCH & GLANKLER.
Memphis, Tennessee.

To fee for legal services and advice rendered for year 1926, subsequent to date of death of W. G. Thomas pertaining to corporate affairs, conferences, examination and revision of building contracts, and all other services rendered on behalf of said corporation during said year_____ $20,000.00
    Received Payment,

HOLMES, CANALE, LOCH & GLANKLER.

*March 25, 1927.*

Pidgeon-Thomas Iron Co.,  To HOLMES, CANALE, LOCH & GLANKLER.
Memphis, Tenn.

To fee for legal services and advice rendered in the matter of final draft of re-organization papers, transferring assets of Pidgeon-Thomas Iron Co., a Tennessee corporation to Pidgeon-Thomas Iron Co., a Delaware Corporation, _____ $5,000.00
    Received payment,

HOLMES, CANALE, LOCH & GLANKLER
    By PHIL M. CANALE.

1926 by the Tennessee corporation. The primary purpose for which legal services were required was to work out some plan whereby the stock owned by the Thomas interests could be purchased in order that the remaining stockholders might secure control of the business of the Pidgeon-Thomas Iron Company. Obviously the greater portion, if not all, of the work of the law firm was done prior to the incorporation of the petitioner on February 1, 1927. No liability for the payment for such services occurred until the bills were rendered to the Delaware corporation on March 25, 1927. *New Process Cork Co.*, 3 B. T. A. 1339; *Associated Gas & Electric Co.*, 2 B. T. A. 263; *Peter Frees, Jr.*, 12 B. T. A. 737. At that date the Tennessee corporation was either dissolved or was a 100 per cent owned subsidiary of the Delaware corporation, but the record does not disclose which condition existed. In either event the bills paid were not to any considerable extent for services rendered to the petitioner here, but were for work done for its predecessor or subsidiary, whichever relationship existed. This being true, we think the whole amount of $25,000 must be regarded as part of the capital cost incurred by the petitioner in securing all the capital stock of the Tennessee corporation. Cf. *North Star Granite Corp.*, 21 B. T. A. 222; *W. P. Brown & Sons Lumber Co.*, 26 B. T. A. 1192.

*Decision will be entered for the respondent.*